JOSEPH C. HART *v.* D. C. RUSSELL AND ANOTHER.

1—A writ of error bond could create no lien when the judgment on which it depended created none.

2—Hence, so long as the act of February 14th, 1860, requiring judgments to be recorded in order to create liens, remained in force, an unrecorded writ of error bond, given upon an unrecorded judgment, could have no lien.

3—See the opinion for distinctions taken between this case and the case of Robertson v. Moorer, 25th Texas, Supplement, 442.

4—And it is to be observed that the several judgments, out of which the conflicting titles in the present case sprung, were rendered subsequent to the passage of the act of February 14th, 1860.

APPEAL from Red River. Tried below before the Hon. Winston Banks.

The facts are sufficiently stated in the opinion of the court.

No brief for the appellant.

*George T. Todd* and *R. R. Gaines*, for the appellees.

MORRILL, C. J.—The points in controversy in this case call upon us to consider the statutes relative to judgments and sheriffs' sales.

Both parties claim title to a certain tract of land, based upon sheriffs' deeds founded upon different judgments against the original owner of the land. Plaintiff and appellant, Hart,

bases his title upon a judgment rendered in the District Court on the 12th of October, 1860, against one Tims, and taken to the Supreme Court by writ of error on the 26th of October, 1860, who gave Gordon, the owner of the land, the surety on the bond, an affirmance of the judgment in the Supreme Court on the 5th of May, 1868, and sale by the sheriff ensued in August, 1868.

Epperson and Russell derive title from a sale based upon several judgments, one of which was rendered against Gordon on the same day and at the same court in which the former judgment was rendered, and was affirmed in the Supreme Court 1st of May, 1867, and another rendered on the day afterwards against one McCulloch, and appealed to the Supreme Court, on the 5th of January, 1861, Gordon being surety on the writ of error bond, which judgment was affirmed by the Supreme Court on the 26th of September, 1863, and sale ensued in February, 1868.

In short the facts are, the different judgments were rendered on the same day in the District Court—one against Gordon, which was affirmed in the Supreme Court, and sale made of the land in controversy before the affirmance of the other in the Supreme Court, in which Gordon was surety on the writ of error bond.

Appellant insists that there was a lien created by virtue of the writ of error bond, which did not exist by the judgment against Gordon in person; and this he considers the question at issue.

The statute (Art. 1495) provides that the bond for writ of error "shall have the force and effect of a judgment against all the obligors." It can not be inferred that a bond, the condition of which is that the maker will pay the judgment of the Supreme Court if the judgment debtor neglects so to do, and which is merged in a judgment and has the force and effect of a judgment only on this condition, can have a greater force or effect than a judgment to which it is a contingency, and with-

out which it is a nullity.   In the case of Robertson v. Moorer, 25 Texas, 442, which was adjudicated when the statute declared that a judgment in a court of record should operate as a lien upon the lands of the defendant in the county, the question before the court was as to the time when the lien attached upon the property of the obligors of the bond.   Judge Bell, in giving the opinion of the court, said:   "Does the lien created by the forfeiture relate back to the time of the execution of the bond, so as to attach to the property of the sureties in the bond, from that time, or does the lien attach upon the rendition of the judgment of this court, or does it attach at the time when the mandate of this court is filed in the office of the clerk of the District Court, where the original judgment was rendered?" And because "it was a part of the force which belongs to a judgment, that it binds certain descriptions of property in a particular manner to satisfy its demands," therefore a bond when forfeited "related back to the time of its execution, and bound the land of the surety in the county where the original judgment was rendered from that time," since the bond had the force of a judgment.

In the case before the court a judgment against a debtor would have as great force and effect in creating a lien upon the land of the debtor as his subsequently entering into a bond to secure the payment of a judgment of a third party rendered on the same day.   It would require an explicit statute before a court would adjudge that a judgment debtor could defeat his creditor by voluntarily using his property to pay the debt of a third party; and we should hesitate long before we would take from a creditor the proceeds of a judgment, and apply the same to the satisfaction of a judgment against a third party, obtained afterwards.

The appellant has referred us to the decisions of this court, and insists that because it has been decided that the judgment of this court, affirming the judgment of the District Court, is a forfeiture of the bond given for writ of error, and upon the

XXXII—2

forfeiture, the lien which springs out of it relates back to the time of the execution of the bond; that hence it follows that when the judgment against Tims was affirmed in the Supreme Court, and judgment was rendered against Gordon as his surety on the writ of error bond, that this judgment related back to the 26th of October, 1860, being the time of the execution of the writ of error bond of Gordon, and that a lien existed on all the real estate of Gordon for the payment of the judgment. At the same time he insists that no lien existed by virtue of the judgment against Gordon in the District Court, because the statute of 14th of February, 1860, Art. 3963, repealed the laws relative to liens of judgments before in force.

We admit that from the 14th of February, 1860, to the 9th of November, 1866, that no lien existed by virtue of a judgment simply, unless the judgment was recorded as provided by the act of 14th of February, 1860. But we know of no law providing that a bond shall operate as a lien in any case. It is because a bond is declared by the statutes to have " the force and effect of a judgment," that the lien is created, and of course where the judgment unrecorded, would not create a lien, a writ of error bond, unrecorded, would not create a lien, because it simply has the force and effect of a judgment. A bond for writ of error, therefore, between the above-named periods of time, 14th of February, 1860, and 9th of November, 1866, did not operate as a lien, and no lien existed against Gordon's property by virtue of either judgments or bonds on the 9th of November, 1866. Whether the act of this date creating a lien on all the real estate of a judgment debtor from the date of the judgment operated retrospectively on the judgments of 1860, or whether it affected them from the time of the passage of the act, or whether it had any effect on judgments previously rendered, it is unnecessary for us to decide; because in either case no lien would be of anterior date to that created by the judgment against Gordon, by virtue of which the defendants in error claim title to the land.

The result, therefore, appears to be, that the judgment, by virtue of which the defendants in error claim title, is of anterior date to the writ of error bond under which appellant claims title, and was affirmed in the Supreme Court one year previous to the one by virtue of which appellant claims title, and that the levy and sale to defendants was before either to plaintiff. Hence both the title and all process and proceedings of the defendants have precedence over those of plaintiff or appellant, and the judgment of the District Court is affirmed.

Affirmed.