**Opinion issued August 12, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00325-CV

———————————

# IN RE NETJETS SALES, INC., NETJETS AVIATION, INC., NETJETS SERVICES, INC., AND CURT KRIPPNER, Relators

---

## Original Proceeding on Petition for Writ of Mandamus

---

## MEMORANDUM OPINION

Relators NetJets Sales, Inc., NetJets Aviation, Inc., NetJets Services, Inc., and Curt Krippner (collectively, "NetJets") filed a petition for writ of mandamus, originally complaining of the trial court's order denying NetJets' motion to dismiss based on a forum-selection clause.[1] The trial judge who signed the order was

---

[1] The underlying case is *James W. Turner Construction, Ltd. v. NetJets Sales, Inc., NetJets Aviation, Inc., NetJets Services, Inc., and Curt Krippner*, cause number

replaced by a new judge after the November election. On January 9, 2025, we issued an order abating the proceeding and remanding to permit the successor trial judge to reconsider the challenged April 15, 2024 order. The trial judge signed an order on February 10, 2025 denying NetJets' motion to dismiss. We conditionally grant the petition.

## Background

Relator NetJets operates a large private aircraft fleet. Real party in interest James W. Turner Construction, Ltd. is a residential construction company and limited liability Texas partnership whose general partner is James W. Turner Construction, Inc. (collectively "Turner'). On December 10, 2021, Turner entered into a Binder Agreement for the purchase of a 25% undivided interest in a 2022 Textron Aviation Inc. 700 aircraft. Pursuant to the terms of the Binder Agreement, Turner wired a 20% deposit of $1,345,000 to NetJets. The anticipated delivery date for the aircraft in the Binder Agreement was October 23, 2022. The Binder Agreement required NetJets to deliver the new aircraft interest to Turner Construction within 120 days of the Anticipated Delivery Date or either party could terminate the agreement and NetJets would be required to return the $1,345,000

2023-83735, pending in the 133rd District Court of Harris County, Texas, the Honorable Nicole Perdue, presiding.

2

deposit. If Turner failed to accept delivery of the aircraft, NetJets had the right to retain the deposit as liquidated damages.

Section 4 of the Binder Agreement, entitled "Additional Terms," contains a choice of law and forum-selection clause. It provides that the agreement shall be governed by the laws of the State of Ohio and that "any action or legal proceeding of any kind, legal or equitable, based upon, arising out of, or in any relating to this Agreement . . . shall be brought exclusively in an appropriate court of competent jurisdiction [] in Franklin County, Ohio."

Turner filed suit against NetJets in Harris County, Texas in December 2023, alleging several causes of action, including fraudulent inducement, rescission, declaratory judgment, unjust enrichment, and money had and received. NetJets filed a motion to dismiss, asserting that all of Turner's claims fell within the scope of and were subject to the forum-selection clause in the Binder Agreement, and thus, Turner's claims were required to be brought in Franklin County, Ohio. Turner responded, arguing that, despite the forum-selection clause, the trial court should deny the motion to dismiss for a number of reasons, including assignment of rights, overreaching, lack of legal capacity, and because granting the motion would unreasonably permit NetJets to benefit from its alleged fraud and misrepresentation by obtaining its forum of choice. After a hearing, the trial court denied NetJets' motion to dismiss. NetJets then filed a petition for writ of mandamus.

Because the judge who signed the challenged order was replaced by a successor judge on January 1, 2025, this Court issued an order pursuant to Texas Rule of Appellate Procedure 7.2(b) on January 9, 2025, abating the proceeding and remanding to the trial court to allow the successor judge to reconsider her predecessor's ruling. The trial court heard argument and denied NetJets' motion to dismiss.

On March 21, 2025, relators filed a motion to reinstate attaching a copy of the successor judge's February 10, 2025 order denying their motion to dismiss. We reinstated the proceeding on April 1, 2025. Because the supplemental reporter's record had not been filed, as required by this Court's January 9, 2025 order, we issued another order on April 8, 2025, directing the filing of the most recent hearing record. A supplemental clerk's record and hearing record were filed on April 17, 2024.

## Sufficiency of the Record

Turner first asserts that the petition does not comply with Texas Rule of Appellate Procedure 52.7 in that the appendix must contain a sworn or certified copy of every document material to Netjets' claim. *See* TEX. R. APP. P. 52.7. The documents in the appendix are all certified documents except for the transcript of the April 15, 2024 hearing. Because that hearing was held before the predecessor judge, we do not consider it for our disposition. Our January 9, 2025 order required

4

the filing of a supplemental reporter's record of any hearing held by the successor judge in her reconsideration of the prior order. This Court ordered the court reporter for the trial court to file this hearing record, which has now been filed.

Whether the record is sufficient to support mandamus relief is a separate issue. In *Walker v. Packer*, the Texas Supreme Court held that the party seeking relief must provide the court with a sufficient record establishing their right to mandamus relief. 827 S.W.2d 833, 837 (Tex. 1992). Turner contends that NetJets failed to provide this Court with all of the exhibits Turner presented to the trial court. An appellate court may deny mandamus relief when the relator fails to file a sufficient record containing all documents material to its claims. *See In re Athans*, 458 S.W.3d 675, 679 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding).

Turner supplemented the record with omitted exhibits to its response to the motion to dismiss. *See* TEX. R. APP. P. 52.7(b) ("After the record is filed, relator or any other party to the proceeding may file additional materials for inclusion in the record."). Thus, the record is sufficient for our review.

### Standard of Review

To establish entitlement to mandamus relief, a relator must show both that the trial court abused its discretion and there is no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). To hold that a trial court has abused its discretion, the court must determine that the trial court's

actions were either "arbitrary or unreasonable" or "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Even when the law is unsettled, the determination of what the law is or its application to the facts is not within the trial court's discretion. *In re CVR Energy, Inc.*, 500 S.W.3d 67, 73 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding). A clear failure to analyze the law or apply it correctly is an abuse of discretion. *See id.* (citing *Walker*, 827 S.W.2d at 840).

### Analysis

NetJets contends that the trial court abused its discretion in denying its motion to dismiss because the Binder Agreement contained a mandatory forum-selection clause. The Texas Supreme Court "has repeatedly granted mandamus relief to enforce forum-selection clauses." *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding). Forum-selection clauses are prima facie valid under both Texas and federal law. *See M/S Bremen v. Zapata Off-Shore Co.* ("*The Bremen*"), 407 U.S. 1, 9 (1972) (upholding forum-selection clause in international contract and agreeing that federal courts should enforce prima facie valid forum-selection clauses unless shown by resisting party to be "'unreasonable' under the circumstances."); *In re AIU Ins. Co.*, 148 S.W.3d 109, 111–12, 117–18 (Tex. 2004) (orig. proceeding) (adopting reasoning of *The Bremen*); *Loya v. Loya*, 507 S.W.3d 871, 876 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (stating that forum-selection clauses are

6

"generally enforceable and presumptively valid"). A trial court abuses its discretion if it does not properly interpret or apply a forum-selection clause. *Laibe Corp.*, 307 S.W.3d at 216.

In holding that forum-selection clauses are presumptively enforceable, the Texas Supreme Court has noted that "[b]y entering into an agreement with a forum-selection clause, the parties effectively represent to each other that the agreed forum is not so inconvenient that enforcing the clause will deprive either party of its day in court, whether for cost or other reasons." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 234 (Tex. 2008) (orig. proceeding). Forum-selection clauses are to be enforced unless the party opposing enforcement establishes that "(1) enforcement would be unreasonable and unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial." *Laibe*, 307 S.W.3d at 316. "The burden of proof is heavy for the party challenging enforcement." *Id.*

The parties' Binder Agreement contains the following forum-selection clause:

> **4) Additional Terms.** This Agreement shall not be assigned by either Party without the prior written consent of the other Party. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Ohio, without regard to any state's choice of law provisions. The state and federal courts located in Franklin County, Ohio shall have exclusive jurisdiction over any action or legal proceeding of any kind, legal or equitable, based upon, arising out of, or in any way relating to this Agreement (a "Legal Action"), and any

such Legal Action shall be brought exclusively in an appropriate court of competent jurisdiction located in Franklin County, Ohio.

Forum-selection clauses may be mandatory or permissive but if the clause uses the word "shall," that generally indicates the clause is mandatory. *See In re Express Delivery Enter. LLC*, No. 12-23-00088-CV, 2023 WL 4681170, at *7 (Tex. App.—Tyler July 21, 2023, orig. proceeding) (mem. op.). The forum-selection clause in the Binder Agreement is mandatory and quite broad as it states that it "shall" apply to "any action or legal proceeding of any kind" . . . "based upon, arising out of, or in any way relating to this Agreement." *See RSR Corp. v. Siegmund*, 309 S.W.3d 686, 701 (Tex. App.—Dallas 2010, no pet.) (holding that language "any action or proceeding arising out of or relating to this Agreement," was broad and encompassed any claims relating to agreement).

Despite the broad scope and presumptive enforceability of the forum-selection clause, Turner argues that there are a number of reasons we should not enforce the forum-selection clause. Turner contends that: (1) some of its claims are beyond the scope of the forum-selection clause; (2) Turner lacked legal capacity to purchase the aircraft under the Binder Agreement; (3) NetJets had to prove that Turner is subject to the forum-selection clause; (4) enforcement of the clause would be unreasonable or unjust; and (5) the clause is invalid for reasons of fraud and overreaching. None of Turner's arguments carry the day.

**Scope of Forum-Selection Clause**

Turner asserts that the forum-selection clause does not encompass its claims for fraudulent inducement, unjust enrichment, money had and received, and for declaratory relief. Whether Turner's noncontractual claims fall within the forum-selection clause's scope "depends on the parties' intent as expressed in their agreement and a 'common-sense examination' of the substantive factual allegations." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 437 (Tex. 2017) (quoting *In re Int'l Profit Assocs., Inc..*, 274 S.W.3d 672, 677 (Tex. 2009) (orig. proceeding)). "Legal theories and causes of action are not controlling." *Pinto Tech.*, 526 S.W.3d at 437.

To determine if Turner's claims are within the scope of the forum-selection clause, we begin with the language of the clause. The parties here agreed that the state and federal courts in Franklin County, Ohio would have "exclusive jurisdiction" over "any action or legal proceeding of any kind, legal or equitable, based upon, arising out of, or in any way relating to this Agreement . . . ." This is broad language. *See In re NEXT Fin. Group, Inc.*, 271 S.W.3d 263, 268 (Tex. 2008) (orig. proceeding). When reviewing a similar forum-selection clause, the Texas Supreme Court held that the phrase "arising out of" is broad with no significant limitation on its breadth. *See Pinto Tech.*, 526 S.W.3d at 437.

The Texas Supreme Court has discouraged artful pleading, such as when a plaintiff characterizes its claim as "a statutory or common-law tort claim to evade the agreed-upon forum despite essential allegations that are 'inextricably enmeshed' or 'factually intertwined' with the underlying contract." *Id.* at 440. To find certain claims not within the scope of the forum-selection clause, Turner had to establish that the facts alleged to support the claim were "'completely independent of the contract, and the claim could be maintained without reference to the contract.'" *Id.* (internal quotations omitted). Turner has not met this burden.

Turner argues that when it executed the Binder Agreement, it was unaware that to complete the purchase of the 25% fractional interest in the aircraft, Turner had to satisfy an "FAA Citizenship Test."[2] Turner's fraudulent inducement claim is premised on its argument that even though NetJets knew about this FAA requirement, NetJets failed to inform Turner, prior to execution of the Binder Agreement, that it would "not be permitted to own and operate a plane in the United States unless it could comply with the FAA's citizenship requirement." According to Turner, NetJets withheld this information "with the intent to defraud [Turner]"

---

[2]     According to Turner, the FAA Citizenship Test requires that to register a plane with the Federal Aviation Administration and obtain the necessary airworthiness certificate, the "applicant for registration must be a partnership and existing under the law of the states of the United States; and the partners be composed entirely of individual citizens of the United States," and this "requirement extends to all general and limited partners.".

and induce Turner to execute the Binder Agreement. This claim is not independent of the Binder Agreement, nor does it fall outside the scope of the forum-selection clause, which applies to "any action . . . based upon, arising out of, or in any way relating to" the Binder Agreement. *See Coastal Bank SSB v. Chase Bank of Tex., N.A.*, 135 S.W.3d 840, 843 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding that "[f]raudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as a part of its proof.").

Turner's unjust enrichment claim seeks restitution for the $1.345 million Turner alleges NetJets wrongfully withheld from resale of the fractional share under the Binder Agreement. "Unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits under circumstances which give rise to an implied or quasi-contractual obligation to return the benefits." *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ). Here, the unjust enrichment claim relates to funds withheld from resale of a share Turner claims is owed to it under the Binder Agreement and thus, Turner would have no grounds for asserting that NetJets is in possession of funds to which Turner is allegedly entitled but for the Binder Agreement. *See In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009) (concluding that no matter how artfully Tropicpak pleaded its claims, its claims and alleged damages arose from contractual relationship between parties). Because the unjust enrichment claim is

not completely independent of the contract, it falls within the scope of the forum-selection clause.

Turner's "money had and received" claim likewise concerns the $1.345 million Turner alleged NetJets wrongfully withheld after reselling the fractional share covered under the Binder Agreement. "An action for money had and received arises when a defendant obtains money which in equity and good conscience belongs to the plaintiff." *Amoco Prod. Co.*, 946 S.W.2d at 164. This claim "belongs conceptually to the doctrine of unjust enrichment." *Id.* Because Turner seeks funds it alleges NetJets wrongfully withheld after reselling its share covered under the Binder Agreement, this claim, just like the unjust enrichment claim, is not completely independent of the agreement or the forum-selection clause and thus falls within the scope of the clause.

Turner's declaratory judgment action seeks a declaration that Turner is entitled to recover the deposit of $1.345 million it paid toward the purchase of a fractional interest under the Binder Agreement. This claim for declaratory judgment falls within the scope of a forum-selection clause because it clearly relates to the Binder Agreement. *See In re Empower Ret., L.L.C.*, No. 14-24-00568-CV, 2025 WL 597060, at *6 (Tex. App.—Houston [14th Dist.] Feb. 25, 2025, orig. proceeding) (mem. op.) (holding that claims for declaratory judgment and money had and received fell within the forum-selection's scope because they all related to

12

parties' agreement).  Moreover, as with the claims of unjust enrichment and money had and received, the allegations supporting the declaratory judgment action are not independent of the Binder Agreement and therefore, this claim falls within the scope of the forum-selection clause.  To the extent the trial court denied the motion to dismiss on the grounds that these claims fell outside the scope of the forum-selection clause,[3] it abused its discretion.

**Legal Capacity**

Turner also argues that it lacked legal capacity to enter into the Binder Agreement based on its inability to satisfy the FAA Citizenship Test, to register the aircraft interest with the FAA, and to enter into the NetJets Fractional Program.  This argument is irrelevant to our inquiry.

In considering whether to enforce a forum-selection clause, the trial court does not consider the enforceability of the contract in which the clause is located.  *See Clark v. Power Mktg. Direct, Inc.*, 192 S.W.3d 796, 800 (Tex. App.—Houston [1st

---

[3]     NetJets includes Turner's claim for rescission in its petition for writ of mandamus, arguing that this claim falls within the scope of the forum-selection clause.  A review of Turner's response to NetJets' motion to dismiss does not indicate that Turner argued in the trial court that its rescission cause of action fell outside the scope of the forum-selection clause, however, we address it to the extent that Turner argues its noncontractual claims fall outside the scope of the clause.  The claim of rescission of the Binder Agreement due to unilateral mistake is a claim that arises from the agreement since, as NetJets argues, without the agreement there would be nothing to rescind.  Thus, this cause of action falls within the scope of the forum-selection clause because it "arises out of" or is related to the Binder Agreement.

Dist.] 2006, no pet.). Turner attempts to attack the enforceability of the Binder Agreement and therefore the forum-selection clause by claiming it was fraudulently induced to enter into the Binder Agreement or lacked capacity to own the fractional interest it agreed to purchase. "To allow a party to avoid its obligations under a presumptively valid contract with a prima facie forum-selection clause simply because the party might carry its burden at trial would give the party an end run around the burdens that these rules establish." *Id.* Accordingly, to the extent the trial court based its denial of the motion to dismiss on Turner's capacity or fraudulent inducement arguments, it abused its discretion.

**Whether Assignment Affects Enforcement of the Forum-Selection Clause**

Turner next asserts that it is not bound by the forum-selection clause because the Binder Agreement is limited to NetJets and the "Owner." The Binder Agreement defines the owner as Turner. Turner points to a discovery response in which NetJets expressed its understanding that Turner had assigned its interest in the Binder Agreement to Sognator LLC. Based on this allegation, Turner contends that NetJets may enforce the forum-selection clause only against Sognator and not Turner.

The Binder Agreement permits assignment if done with the consent of the other party. Texas law generally permits parties, with certain exceptions, to assign their rights and duties under contracts. *See Phoenix Network Tech. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 620 (Tex. App.—Houston [1st Dist.] 2005, no

14

pet.). Turner does not admit that it assigned its interest, it merely claims that NetJets has not proven that Turner is subject to the forum-selection clause.

As frequently stated by the courts, forum-selection clauses are presumptively enforceable. *Lyon Fin. Servs.*, 257 S.W.3d at 234. The Binder agreement was signed by both Turner and NetJets. Turner is the party that filed suit asserting claims relating to and based on the agreement, including a declaratory judgment action seeking interpretation of certain terms under the Binder Agreement. Turner's suit triggered enforcement of the forum-selection clause because all its claims concern the Binder Agreement and the clause states that it applies to any action of any kind relating to the agreement. To avoid the presumption of enforceability of the forum-selection clause, Turner was required to prove that its claims are not subject to the clause, and it did not do so. NetJets, as a party to the agreement, has the right to enforce the forum-selection clause. To the extent the trial court denied the motion to dismiss based on any alleged assignment by Turner, it abused its discretion.

**Parties to the Binder Agreement**

Turner further argues that because it also sued Curt Krippner, who is not a signatory to the Binder agreement, NetJets has failed to establish that the forum-selection clause is enforceable against all parties to the suit. Krippner is the Senior Vice President of Sales for NetJets and, according to Turner's original petition, he is not being sued individually, but as an employee of the NetJets' organization.

15

Concerning non-signatories to an agreement containing a forum-selection clause, the Texas Supreme Court has stated:

> Though enforceability is not the concern it once was, courts are frequently confronted with disagreements about the specific claims encompassed and the extent to which nonsignatories may resist or enforce such clauses. In determining these matters, common principles of contract and agency law and the parties' chosen language are the fulcrum of our inquiry because forum-selection clauses are creatures of contract and we must give effect to the parties' intent as expressed in the four corners of the document.

*Pinto Tech.*, 526 S.W.3d at 432.

NetJets argues that all defendants, including Krippner, are "entitled to the protection afforded by and to seek enforcement of the Forum-Selection Clause." NetJets asserts that Krippner's alleged involvement is solely as an employee and agent of NetJets and Krippner may enforce the forum-selection clause under the transaction-participant theory.

A valid forum-selection clause applies to all transaction participants, regardless of whether those participants were actual signatories of the contract. *See Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 75 (Tex. App.—Dallas 1996, no writ), *overruled in part on other grounds by In re Tyco Elec. Power Sys., Inc.*, No. 05-04-01808-CV, 2005 WL 237232, at *4 & n.1 (Tex. App.—Dallas Feb. 2, 2005, orig. proceeding) (mem. op.). Transaction participants are non-signatories who are "closely related to the contractual relationship." *Pinto Tech.*, 526 S.W.3d at 444 (quoting *Magi XXI, Inc. v. Stato della Citta Del Vaticano*, 714

16

F.3d 714, 723 (2d Cir. 2013) (which held that non-signatory "may enforce the forum selection clause against a signatory if the non-signatory is 'closely related' to another signatory.")). Federal courts have held that if a non-party is closely related to the contractual relationship, transaction participants, nonparties, and parties "should benefit from and be subject to forum selection clauses." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007). If the non-signatory's relationship to the signatory is close enough that the enforcement of the forum-selection clause by the non-signatory would be foreseeable to the opposing party, enforcement is permitted. *Pinto Tech.*, 526 S.W.3d at 444. A transaction participant includes "an employee of one of the contracting parties who is individually named by another contracting party in a suit arising out of the contract containing the forum selection clause." *Accelerated Christian Educ.,* 925 S.W.2d at 75; *see also Dunlap Enter. v. Roly Poly Franchise Sys., L.L.C.*, No. 05-08–1556-CV, 2010 WL 2880179, at *3 (Tex. App.—Dallas July 23, 2010, no pet.) (mem. op.) (affirming finding that non-signatory parties were transaction participants because they were alleged to be agents of signing party and thus, non-signatory was subject to forum-selection clause). Thus, a "trial court may apply a valid forum selection clause to all transaction participants." *Id.*

Here, NetJets argued in the trial court that Krippner was an employee of NetJets and, according to Turner's allegations, he was involved in the events and

negotiations leading to the signing of the Binder Agreement. Turner does not seek individual liability against Krippner. Rather, Turner globally alleges that all named defendants engaged in the complained of conduct, all of which concerns negotiation and execution of the Binder Agreement. We thus conclude Krippner was a transaction participant. *See Accelerated Christian Educ.,* 925 S.W.2d at 75. As a transaction participant, Krippner was entitled to enforce the valid forum-selection clause against Turner. To the extent the trial court found otherwise, it abused its discretion.

NetJets also argued that application of equitable estoppel allowed Krippner to enforce the forum-selection clause. Courts have held that equitable estoppel is applicable "when a signatory to the contract containing the forum-selection clause raises allegations of substantially interdependent and concerted misconduct by both nonsignatories and one or more signatories to the contract." *Deep Water Slender Wells, Ltd. v. Shell Int'l Expl. & Prod., Inc.*, 234 S.W.3d 679, 694 (Tex. App.— Houston [14th Dist.] 2007, pet. denied). Here, the claims Turner raises against NetJets are substantially the same and factually intertwined with the claims it raises against Krippner. In its original petition, Turner alleges that its causes of action apply to all defendants, including Krippner. It makes no effort to distinguish between Krippner and the other defendants. Thus, Krippner can enforce the forum-selection clause based on principles of equitable estoppel. *See id.* To the extent the

18

trial court denied the motion to dismiss based on Turner's claims against the non-signatory Krippner, it abused its discretion.

**Overreaching and Unfair Surprise**

Turner argues that, by seeking to enforce the forum-selection clause, NetJets is overreaching and asking the trial court to overlook Turner's legal capacity to perform and NetJet's fraud to enforce the forum-selection clause. We disagree. As we have concluded, Turner's claim that it lacked legal capacity to enter the Binder Agreement does not prevent enforcement of the forum-selection clause. We reach a similar conclusion with respect to Turner's fraudulent inducement claim.

The basis of Turner's fraudulent inducement claim is that NetJets induced Turner to enter into the Binder Agreement knowing that Turner could not perform the contract and, therefore, it is unconscionable for NetJets to enforce the forum-selection clause. But this is insufficient to prevent enforcement of the forum-selection clause. "[S]imply alleging fraud in the inducement of a contract is not sufficient to make a forum selection clause unenforceable." *My Café-CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 867 (Tex. App.—Dallas 2003, no pet.). When the language of the forum-selection clause "encompasses all causes of action concerning the contract, the claim that a party was fraudulently induced to enter the contract does not avoid the forum selection clause." *Id.* Here, the broad language of the forum-selection clause encompasses all of Turner's claims and thus, Turner's

fraudulent inducement claim does not prevent enforcement of the forum-selection clause. *See id.*

To invalidate the forum-selection clause, Turner must establish that it was fraudulently induced to enter into the forum-selection clause itself. *See Lyon Fin. Servs.*, 257 S.W.3d at 232. In *Lyon Financial Services*, the Texas Supreme Court stated: "We have held that fraudulent inducement to sign an agreement containing a dispute resolution agreement such as an arbitration clause or forum-selection clause will not bar enforcement of the clause unless the specific clause was the product of fraud or coercion." *Id.*; *see also In re Longoria*, 470 S.W.3d 616, 632 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding) ("The fraud or overreaching in question must involve the negotiation of the forum-selection clause itself."). Turner has not claimed that it was fraudulently induced to agree to the forum-selection clause.

As to the contention that a forum-selection clause constitutes overreaching, the Texas Supreme Court has stated:

> A trial court abuses its discretion if it refuses to enforce a forum-selection clause unless the party opposing enforcement clearly shows that (1) the clause is invalid for reasons of fraud or overreaching, (2) enforcement would be unreasonable or unjust, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial.
>
> . . . .

> We analyze claims of "overreaching" in the context of whether the contract results in unfair surprise or oppression to the party alleging overreaching.

*Int'l Profit Assocs.*, 274 S.W.3d at 675, 678 (internal citations omitted).

NetJets and Turner are sophisticated business entities that negotiated "at arms length."[4] *See id.* at 679. Turner is presumed to have understood and agreed to the contents of the agreement it signed. *Longoria*, 470 S.W.3d at 632–33 (holding that "a party who signs a contract is presumed to know its contents and its legal effects."). The forum-selection clause is part of a short, 2-page agreement, and the clause is "in the same font style and size as all other provisions." *Int'l Profit Assocs.*, 274 S.W.3d at 679. Under these circumstances, NetJets had no duty to separately disclose the forum-selection clause. *See id.*

"We analyze claims of 'overreaching' in the context of whether the contract results in unfair surprise or oppression to the party alleging overreaching." *See id.* at 678. Turner failed to prove that enforcement of the forum-selection clause should be barred based on overreaching. Turner does not argue that it was surprised by the presence of the forum-selection clause, and it does not explain how enforcement of

---

[4]  In its original petition, Turner alleges that NetJets is the "leader in private aviation" operating "the largest and most diverse private aircraft fleet in the world." It also alleges that Turner "is a successful residential construction company" and that due "to its success and an increased need for travel" it reached out to NetJets to "learn about the potential to purchase" an aircraft.

the clause would be oppressive, other than its claim that it was fraudulently induced to enter the Binder Agreement.

Turner has not met its burden of proving that enforcement of the forum-selection clause should be barred on the grounds of overreaching or fraud. To the extent the trial court denied the motion to dismiss on this basis, it abused its discretion.

**Unreasonable or Unjust to Enforce the Forum-Selection Clause**

Lastly, Turner argues that the trial court correctly declined to enforce the forum-selection clause because it would have been unreasonable or unjust to do so. But Turner has not proven that enforcement of this clause would be unreasonable or unjust. In its response to NetJets' motion to dismiss, Turner argued that enforcement would be unreasonable or unjust based on its claims of legal incapacity, assignment of interest, and that its claims for unjust enrichment, money had and received, fraudulent inducement, and declaratory relief fell outside the scope of the forum-selection clause. As we have previously discussed, none of these arguments preclude enforcement of the forum-selection clause.

Establishing that enforcement of a forum-selection clause is unreasonable or unjust is a heavy burden. *In re ADM Inv. Servs., Inc.*, 304 S.W.3d 371, 375 (Tex. 2010) (orig. proceeding). Although there are exceptions when enforcement would be unreasonable or unjust or seriously inconvenient, these concern "extreme

22

circumstances that courts cannot presently anticipate or foresee . . . ." *Id.* at 376. Such extreme circumstances could involve a "forum-selection clause in a contract of adhesion, or a controversy that the parties could never have had in mind." *Id.* (citing to hypothetical circumstances discussed in *M/S Bremen*, 407 U.S. at 18).

Turner has not presented proof of extreme circumstances that might give rise to an exception to enforcement. *See ADM Investor Servs.*, 304 S.W.3d at 376. Turner claims it would be unjust to relegate Turner Construction "to a potentially hostile forum favoring NetJets." But when parties enter into an agreement with a forum-selection clause, they "effectively represent to each other that the agreed forum is not so inconvenient that enforcing the clause will deprive either party of its day in court, whether for cost or other reasons." *In re Lyon Fin. Servs.*, 257 S.W.3d at 234.

Turner agreed to the Ohio forum when it signed the Binder Agreement, and it has provided no proof that trying its case in Ohio would be unjust. To the extent the trial court denied the motion to dismiss on the basis that enforcing this forum-selection clause would be unreasonable or unjust, it abused its discretion.

### NetJets Lacks an Adequate Remedy by Appeal

When the trial court improperly refuses to enforce a forum-selection clause, allowing trial to go forward, the remedy by appeal is inadequate because the party will be subjected to "trial in a forum other than that agreed upon and requiring an

23

appeal to vindicate the rights granted in a forum-selection clause is clear harassment." *AIU Ins. Co.*, 148 S.W.3d at 117. Moreover, permitting a case to proceed in a forum other than that agreed upon would add a "layer of expense that would otherwise not exist" which might encourage a breaching party to protract the proceedings hoping to promote a favorable settlement. *Id.* at 118. Because we have concluded that the trial court abused its discretion in denying the motion to dismiss, NetJets lacks an adequate remedy by appeal.

## Conclusion

Having concluded that the trial court abused its discretion in denying NetJets' motion to dismiss based on the forum-selection clause, we conditionally grant the petition for writ of mandamus and direct the trial court to (1) vacate its order of February 10, 2025 denying NetJets' motion to dismiss based on the forum-selection clause, and (2) grant NetJets' motion to dismiss. We are confident the trial court will comply with this directive. The writ will issue only if the trial court fails to comply.

## PER CURIAM

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.